[Crim. No. 1835.   Second Appellate District, Division One.—November 29, 1929.]

THE   PEOPLE,   Appellant,   v.   JAMES   SANDERS,   Respondent.

U. S. Webb, Attorney-General, John W. Maltman, Deputy Attorney-General, Buron Fitts, District Attorney, and Wm. R. McKay, Deputy District Attorney, for Appellant.

Joseph W. Ryan and Frank J. Ryan for Respondent.

HAHN, J., *pro tem.*—The People of the State of California prosecute this appeal from an order of the Superior Court in and for the county of Los Angeles granting defendant's motion in arrest of judgment.

It appears from the record that the defendant and respondent was bound over to the Superior Court by commitment issued by the committing magistrate for the crime of ''attempt to commit robbery'' from the person and presence of one Lawrence Knezvich. The district attorney in due course filed an information in the Superior Court charging the defendant and respondent in count I with the crime of ''attempting to rob'' one Lawrence Knezvich; in count II with the crime of ''attempting to rob'' one Jack Summers, and in count III with the crime of ''burglary.''

The defendant filed a demurrer to the information, particularly attacking counts II and III, on the ground that the court had no jurisdiction to try the defendant for the offenses therein set forth for the reason that the commitment designated only the crime set forth in count I. The record does not indicate what ruling, if any, was made by the court on this demurrer. It appears, however, that the defendant plead ''not guilty'' to each of the counts and went to trial upon the information, as drawn, before the court without a jury, a jury trial having been waived. During the trial count I was dismissed. Upon completion of the trial the defendant was found guilty of the crimes charged in counts II and III. Subsequent to the conviction and prior to passing of sentence, the defendant again filed a demurrer to the information, attacking counts II and III on the ground that the court had no jurisdiction of the offense therein charged, for the reason that the defendant had not been accorded a preliminary examination upon these charges and that the commitment, upon which he was

bound over for trial, did not designate the crimes set forth in counts II and III. This demurrer was overruled by the court, whereupon the defendant made a motion in arrest of judgment, basing his motion upon the same grounds as set forth in his demurrer, and particularly alleging that the latter portion of section 809 of the Penal Code, which it was contended by the district attorney authorized the inclusion of counts II and III in the information, was unconstitutional. The court agreed with the view of defendant and respondent and granted his motion in arrest of judgment.

It is agreed by counsel on both sides that the determination of this appeal is dependent upon the question of the constitutionality of the latter portion of section 809 of the Penal Code, which was added as an amendment to section 809 by the legislature in 1927 (Stats. 1927, p. 1045). For the sake of brevity, we will refer to the disputed portion of the section as the amendment.

Section 809 of the Penal Code reads as follows (the amendment being set out in heavy type):

"Filing Information After Examination and Commitment. When a defendant has been examined and committed, as provided in section 872 of this code, it shall be the duty of the district attorney, within **fifteen** days thereafter, to file in the superior court of the county in which the offense is triable an information charging the defendant with such offense. The information shall be in the name of the people of the State of California and subscribed by the district attorney, and shall be in form like an indictment for the same offense. **It may charge the offense, or offenses, named in the order of the commitment, or any offense, or offenses, shown by the evidence taken before the magistrate to have been committed.**"

It is respondent's contention, first, that the amendment is in contravention of section 8 of article I of the Constitution of California, in that by said section the committing magistrate is alone vested with the power of designating the particular crime with which a defendant may be charged in an information, and upon which he may be put to trial before a jury; and, second, that the amendment attempts to clothe the district attorney, an executive officer, with judicial functions, and this is in contravention of section 1 of article III, of the state Constitution.

Section 8 of article I of the Constitution of California reads as follows:

"Sec. 8. Offenses heretofore required to be prosecuted by indictment shall be prosecuted by information, after examination and commitment by a magistrate, or by indictment, with or without such examination and commitment, as may be prescribed by law. A grand jury shall be drawn and summoned at least once a year in each county.

The question as to the power of the district attorney in drawing an information to change, amend or add to the offense designated in a commitment issued by the committing magistrate, has long been a matter for discussion by courts of appellate jurisdiction in California. The early decisions prior to the case of *People* v. *Nogiri,* 142 Cal. 596 [76 Pac. 490], handed down in March, 1904, uniformly sustained the right of the district attorney in drawing an information to charge any offense that appeared from the depositions taken in the preliminary examination to have been committed, whether the offense was designated in the commitment or not. In the Nogiri case the Supreme Court definitely held that the district attorney did not have such power, thus reversing the previous holding of the court on that point. Inasmuch as respondent in his brief dwells at length upon the Nogiri case in support of his contentions, it will be helpful to review the case in detail.

The defendant Nogiri was committed by the magistrate to the Superior Court for trial for the crime of "assault with a deadly weapon." The information filed by the district attorney charged defendant "with an assault with a deadly weapon with intent to commit murder." After referring to the previous decisions upholding the right of the district attorney to include in the information offenses not designated in the commitment, the court, speaking through Mr. Justice Henshaw, says: "The result of these decisions is to vest in a ministerial and executive officer, the district attorney, supervisorial, appellate and judicial powers controlling the judgment of a judicial magistrate who alone, under the Constitution, is empowered to hold the examination, and who alone is empowered to declare by his commitment the offense for which the accused person shall be put to trial. This, we think, the law neither contemplates nor permits. The Constitution of this state (art. I, sec. 8) pro-

vides that 'offenses heretofore required to be prosecuted by indictment shall be prosecuted by information after examination and commitment by a magistrate.' Section 872 of the Penal Code declares in effect that if the magistrate after examination shall determine that the offense charged, or some other offense, shall have been committed, he is to make an order declaring that the offender shall be held to answer *'to the same'* and stand committed to the sheriff. Section 809 of the Penal Code, defining and prescribing the duties of the district attorney under the circumstances, declares that 'When a defendant has been examined and committed, as provided in section 872 of this code, it shall be the duty of the district attorney, within thirty days thereafter, to file in the superior court of the county in which the offense is triable, an information charging the defendant *with such offense.'* *There is thus neither in the Constitution nor in the laws enacted in furtherance of it the slightest vestige of judicial, discretionary or appellate power given to the district attorney in controlling the action of the committing magistrate.* His functions are ministerial purely. He is told to file an information charging the defendant with the offense for which, after judicial inquiry, he has been held to answer.'' (Italics ours.)

Mr. Justice Henshaw, with the purpose of enforcing the conclusion arrived at, quotes a portion of the dissenting opinion written by Mr. Justice Harlan of the United States Supreme Court in the case of *Hurtado* v. *California,* 110 U. S. 516 [28 L. Ed. 232, 4 Sup. Ct. Rep. 111, 292, see, also, Rose's U. S. Notes], wherein was considered and determined the question as to whether or not the amendment to the Constitution of California of 1879, which provided for prosecution of public offenses by information as well as by indictment, was in conflict with the Constitution of the United States. The language quoted is as follows: ''Under the local statutes in question even the district attorney of the county is deprived of any discretion in the premises, for if, in the judgment of the magistrate before whom the accused is brought, and generally he is only a justice of the peace, a public offense has been committed, it becomes the duty of the district attorney to proceed against him by information for the offense indicated by the committing magistrate.''

It will be noted that the conclusion of the court in the Nogiri case was based primarily upon the view that, ''Neither in the Constitution, nor in the laws enacted in furtherance of it, is there the slightest vestige of judicial, discretionary or appellate power given to the district attorney in controlling the acts of the committing magistrate.''

Undoubtedly, the legislature moved by the holding in the Nogiri case and subsequent cases where the Nogiri case was cited as authority for the same ruling, that there was no provision in the statutes authorizing the district attorney to include in an information any crime or crimes not designated in the commitment and being convinced that the investing of such power under limited conditions in the district attorney would tend to make more efficient, prompt and less expensive, the trials of those charged with crime, determined to enact legislation that would clearly give to the district attorney this power; hence the amendment in question to section 809 of the Penal Code.

It is respondent's contention, first, that, under section 8 of article I of the Constitution, the committing magistrate is clothed with the exclusive power to designate the offense that the defendant should be charged with in the Superior Court, and the legislature is therefore without power to delegate to the district attorney the discretion provided in the amendment; and, second, that the amendment is an attempt to clothe an administrative officer with judicial powers, which, it is urged, is in contravention of section 1, article III, of the Constitution, which divides the powers of government into three separate departments and prohibits the exercise by one department of powers properly belonging to another.

It has been firmly established that there is no vested right in a remedy and that the legislature has the power to regulate procedure in criminal cases. (*People* v. *Campbell*, 59 Cal. 243 [43 Am. Rep. 257].) Indeed, counsel for respondent in his brief concedes this proposition. The question in the Campbell case under consideration was whether or not, subsequent to the adoption of the Constitution of 1879, wherein it was provided that those charged with public offenses might be proceeded against by information as well as indictment, the district attorney could by information charge an offense that had been committed prior to the

adoption of the Constitution. The opinion quotes from Cooley on Constitutional Limitations, wherein it is held that "Remedies must always be under the control of the legislature." Also, the conclusions of the Supreme Court of Massachusetts in *Conn ex rel. Springfield* v. *Hampden Commissioners of Highways,* 6 Pick. (Mass.) 508, where the court said: "But there is no such thing as a vested right to a particular remedy. The legislature may always alter the form of administering right and justice, and may transfer jurisdiction from one tribunal to another." This doctrine is supported by Mr. Bishop in his work on Statutory Crimes, section 178. Indeed, article I, section 8, of the Constitution by its very language authorizes the legislature to provide the detailed procedure to be followed in bringing to trial those charged with public offenses, for it says: "Offenses . . . shall be prosecuted by information . . . or by indictment . . . *as may be prescribed by law.*" (Italics ours.)

Pursuant to the authority thus prescribed by the Constitution the legislature has provided for the various steps in bringing one charged with a public offense before a magistrate for examination, and also the powers and duties of the magistrate in conducting the examination and binding the defendant over to the Superior Court for trial. The legislative grant of these powers has been uniformly sustained and particularly those provided in section 872 of the Penal Code. (*People* v. *Staples,* 91 Cal. 23 [27 Pac. 523]; *People* v. *Lee Look,* 143 Cal. 216 [76 Pac. 1028]; *People* v. *Hinshaw,* 194 Cal. 1 [227 Pac. 156]; *People* v. *Foster,* 198 Cal. 112 [243 Pac. 667, 671].)

So, too, the legislature has prescribed the duties and powers of the district attorney in the necessary steps after the preliminary examination up to the trial before a jury in the Superior Court, and also the powers of the district attorney and the court during the trial. These powers have generally been sustained as within the scope of legislative enactment. (*People* v. *Foster, supra.*)

Since the Nogiri case, the amendment of an information has repeatedly been before our courts, but in every instance where this question has been discussed and the limitation of the power of the district attorney in filing an amended information upheld, the ruling has been predicated upon the lack of authority prescribed by the legislature and not be-

cause of the inhibitions of the Constitution. In *People* v. *Hinshaw*, 194 Cal. 1 [227 Pac. 156, 161], the court, in discussing the validity of an amended indictment filed by the district attorney under the direction of the court said: "Appellant has cited a number of authorities to the effect that the district attorney has no authority to file an information for a different offense than the one shown by the commitment (citing cases). These authorities involve section 809 of the Penal Code, but the distinction must be observed between charging a different offense and charging the same offense differently."

In *People* v. *Foster, supra,* the action of the trial court in permitting the district attorney to amend an information changing the name of the person alleged in the commitment and in the information to have been robbed was under attack. The court said: "Conceding that the district attorney by virtue of section 809 of the Penal Code is confined to the same crime in framing the information as the one designated by the magistrate in the commitment, such an exaction would not strip the legislature of the power to authorize the correction of an error by an amendment of the information so as to correctly identify the person who was actually injured by the robbery if the evidence taken at the preliminary examination justifies the amendment. The whole system of procedure by information is subject to control and regulation by the legislature."

Language of similar import from other California cases might be quoted, but to do so would extend this opinion to an unwarranted length. It will suffice to observe that we have been cited to no case decided since the Nogiri decision where our Supreme Court has held or even indicated that the limitation of the power of the district attorney in filing an amended information, including offenses not designated in the commitment, was due to any constitutional inhibitions. The case of *People* v. *Foster, supra,* involves facts similar to those in the instant case and presents an interesting discussion of the constitutional rights of one charged with a crime, in so far as the procedure in bringing him to trial is concerned. The original information charged the defendant with robbery, specifying that the sum of $46 was feloniously and forcibly taken from the person, possession and immediate presence of one Mrs. Agnes

Funke. During the trial it appeared from the evidence that the money was not taken from the possession and immediate presence of Agnes Funke, but was taken from the possession and immediate presence of one Freda Knuebel, another person. The defendant upon appeal urged that his constitutional rights were violated in the filing of the amended information without a preliminary examination upon the charge of robbing Freda Knuebel. In discussing this question, the court construed section 1008 of the Penal Code and comments thus: ''The procedure by indictment and information are so vastly different as to justify the distinction observed by section 1008 of the Penal Code, which prohibits the amendment of an indictment in such form as to change the offense charged therein and permits the amendment of an information so long as the crime stated by the amendment is supported by the evidence which was taken at the preliminary examination. By pursuing this course the due process clauses of the federal and state Constitutions are not violated by such an amendment for the reason that the defendant was present and was given an opportunity to defend himself throughout the entire proceedings. (*Hurtado* v. *California,* 110 U. S. 516 [28 L. Ed. 232, 4 Sup. Ct. Rep. 111, see, also, Rose's U. S. Notes] . . . )

''Under our system of criminal procedure the committing magistrate is not limited in making his order of commitment to the allegations of the complaint or the crime named therein. It is his duty to commit the accused for trial for the offense disclosed by the evidence, even though it be a different offense than the one laid in the complaint. (Citing authorities.) In this case the accused was held to answer to the charge of robbery committed in the county of Los Angeles on a stated day; the kind of property taken is described as money and the amount thereof was $23. The crime charged in the complaint and found by the magistrate to have been committed by the defendant was *robbery,* with the time, place and amount of money taken specifically stated. . . . If no constitutional right of personal liberty is violated by amended section 1008 of the Penal Code—and we are not aware of such violation nor have we been cited to any authority in this state which challenges the authority of the legislature to so regulate criminal procedure—all

of the objections made by appellant as to the identity of the crime are swept aside by the amendment.''

In the case of *People* v. *Shope,* 77 Cal. App. 427 [245 Pac. 998], section 1008 of the Penal Code was declared the authority for amending an information under direction of the court, citing the case of *People* v. *Foster, supra,* as authority for the ruling.

In the case of *People* v. *Milligan,* 77 Cal. App. 745 [247 Pac. 580, 581], this court had under review the action of the trial court in permitting the district attorney to amend an information during the trial of the case. This court, after quoting section 1008 of the Penal Code, says: ''The language of the statute, while stated negatively, would seem to warrant an amendment such as is here involved, provided that the substantial rights of the defendant were not prejudiced thereby and that the charge preferred by the information as amended constitutes an offense shown by the evidence taken at the preliminary examination. (*People* v. *Foster,* 198 Cal. 112 [243 Pac. 667].)''

If then the power granted under section 1008 of the Penal Code to amend an information is not in conflict with constitutional provisions, and the authorities from which we have quoted as well as others which we might cite abundantly sustain the validity of this section, we are unable to conclude that the grant of power to the district attorney by the amendment to section 809 of the Penal Code is in conflict with any provision of the ·Constitution. All that has been and can be said from the standpoint of constitutional interpretation, reason and logic to support the validity of section 1008 of the Penal Code may be urged with like force to sustain the amendment under consideration.

The opinion in *Ex parte Nicholas,* 91 Cal. 640 [28 Pac. 47], although written prior to the Nogiri case, presents a well reasoned and forceful argument in support of the conclusion we have arrived at in the instant case. Indeed, the language so succinctly and clearly stated the reasons for granting the district attorney the powers provided in the amendment that when the same question was before the court in the case of *In re Severin,* 188 Cal. 348 [205 Pac. 101], Chief Justice Shaw in writing the opinion of the court, which supports the views we here express, quoted freely from the opinion in the Nicholas case.

In the case of *People* v. *Barnett*, 99 Cal. App. 409 [278 Pac. 885], which so far as we are informed, is the only case decided since the adoption of the amendment in which the question of the validity of an information containing a charge not included in the commitment has been considered, the court upheld as valid the power of the district attorney to include such an offense in the information. While it is true, the constitutionality of the amendment was not directly attacked, it does appear that the principal contention urged by appellant for a reversal of the judgment of conviction was that his constitutional rights were invaded by reason of the fact that a charge was included in the information that was not included in the original complaint. The court, in overruling appellant's contention, referred to the amendment to section 809 of the Penal Code as fully justifying the court's conclusion.

Respondent also urges that the amendment in question is void in that it attempts to clothe the district attorney, a ministerial officer, with judicial power and that this is in contravention of section 1, article III, of the Constitution, which reads as follows: "The powers of the government of the state of California shall be divided into three separate departments—legislative, executive and judicial; and no person charged with the exercise of powers properly belonging to one of these departments, shall exercise any functions appertaining to either of the others, except as in this Constitution expressly directed or permitted."

There is abundant authority in California giving support to legislation that vests in a legislative body, or administrative officer, judicial functions, when such acts are merely incidental to the performance of a legislative or executive function. The cases are not uniform in fixing the line of demarcation between the valid grant of such authority, and legislation which improperly intrudes upon judicial functions which are by the Constitution reserved to the judicial branch of the government. There is authority, however, for the general rule that where the judicial act authorized is merely incidental to the main function of the legislative body, or administrative office, the grant is not void because of constitutional limitations. In fact, the exercise of this incidental judicial power by administrative officers and municipal bodies has become so common that citation of author-

ity seems hardly necessary. It may suffice to suggest that in the matter of public improvements, various boards and officials clearly classified as legislative bodies and administrative officers are constantly performing judicial functions in fixing the boundaries of assessment districts; in determining whether property affected is either damaged or benefited thereby, and in fixing the amounts of such damage or benefit; in equalizing special assessments and taxes. Then, too, there are various boards and commissions which function as a part of the executive branch of the government that are frequently required to make decisions, which call for the exercise of judicial functions. Legislative enactments authorizing the exercise of judicial functions in the various lines of activities indicated, have been in the main sustained as not invading the judicial branch of the government.

In the case of *People* v. *Sacramento Drainage Dist.*, 155 Cal. 373 [103 Pac. 207], the court, answering the criticism that the act of the legislature in creating the Sacramento drainage district was unconstitutional for the reason, among others, that it conferred judicial powers on the board of drainage commissioners in contravention of the provisions of the Constitution delegating to the courts the exercise of judicial functions, says:

"It is insisted that this (act) either creates a court or confers judicial powers upon executive and administrative officers in violation of the constitutional provision of sections 1 and 5 of article VI of the Constitution. That the board sitting to equalize the assessments acts judicially, must be conceded. The very purpose for which it sits is to act judicially for the correction of errors and abuses in the original assessment. But to say that for this reason the legislature has attempted to create a court in violation of the Constitution is a proposition to which assent must be denied. Many acts, judicial in their nature, must of necessity be performed by the executive and administrative officers of the government. The decisions of such officers upon any controverted question, upon any question even in which there is play for discretion, are in their nature judicial. But because this is so, and necessarily so, it does not follow that they are usurping the exclusive functions of the courts of the land, and if they are not doing so, the power which they

exercise may not be questioned. City councils and boards of supervisors annually fix the rates which water consumers within their territories shall pay to *quasi* public corporations furnishing such water. Here, these boards are called upon to consider and decide controverted questions of fact of great moment and of much nicety. Their decrees fixing rates contain many of the elements of a judgment. They are binding determinations upon the water company upon the one hand, and upon the consumer upon the other; yet, the power of these boards to exercise such *quasi* judicial functions has been upheld.''

In the case of *Robinson* v. *Kerrigan,* 151 Cal. 40 [121 Am. St. Rep. 90, 12 Ann. Cas. 829, 90 Pac. 129, 132], the court had under consideration the constitutionality of the ''Torrens Title Act.'' Answering an assertion that the act was unconstitutional in that it conferred upon the county recorder, an administrative officer, judicial powers, the court said: ''The claim is made, although not argued, that by sections 48, 49, 55, 58, 59, 60, 61, 64, 67 and 68 of the act the registrar is given judicial powers. These sections require the registrar to note upon the duplicate certificate of title in his office the existence and general character of instruments creating liens, incumbrances, trusts, powers or leases affecting the land described in the certificate. The point is that the registrar is required to determine the legal effect of these instruments, and that this is a judicial function which can be given only to a judicial officer. There is no force to the objection. Every administrative officer is frequently called upon, in the discharge of his duties, to decide questions of law relating thereto. The recorder is required to determine whether an instrument presented for record is a deed, a mortgage, a lease, a notice of action or what not, so as to record it in the proper book. The sheriff must often determine, for his own guidance in making a levy, the ownership of property. The clerk must determine the nature and legal effect of papers filed with him, and perform the appropriate duty respecting them. The duties required of the registrar by these sections are of the same nature. His decision in the matter is not conclusive. If he decides wrongfully and refuses to perform the appropriate duty in the premises, he may be compelled to act properly

by means of a writ of *mandamus,* the same as any other ministerial officer who mistakes his duty under the law and refuses to perform it. The exercise of such powers by ministerial officers is a necessary function of the executive department, and although it may require similar deliberation to that involved in the exercise of judicial power, the bestowal of such powers upon the executive department does not violate the provisions of the Constitution forbidding that department to exercise the functions of any other department.'' (*People* v. *Simon,* 176 Ill. 165 [68 Am. St. Rep. 175, 44 L. R. A. 801, 52 N. E. 910] ; *Land Owners* v. *People,* 113 Ill. 296; 1 Story on Constitution, 5th ed., sec. 525; *Chinn* v. *Superior Court,* 156 Cal. 478 [105 Pac. 580].) Many other authorities and judicial opinions holding to the same effect might be cited, but we deem it unnecessary.

■ Our conclusion, therefore, is that the amendment to section 809 of the Penal Code passed by the legislature in 1927 is not unconstitutional, but that the powers therein granted to the district attorney are within the power of the legislature to authorize.

The fact that we have not discussed in detail all of the cases cited in the briefs filed herein does not indicate we have failed to give them consideration. The length of this opinion would seem to preclude further discussion of the authorities cited.

The judgment of the trial court in granting defendants' motion in arrest of judgment is reversed and the case remanded to the trial court for pronouncement of judgment or such other proceedings as the court may be advised.

York, J., concurred.

HOUSER, Acting P. J., Dissenting.—I dissent from the judgment. Particularly am I unable to agree that the questioned provisions of section 809 of the Penal Code are not in violation of section 8, article I, of the Constitution of this state. By the terms of the statute, in the matter of preparing an information presumably based upon a commitment, the district attorney is authorized to exercise appellate jurisdiction over the judgment rendered by a committing magistrate. In the information the district attorney may charge not merely a lesser offense included within that

for which the defendant was held to answer to the Superior Court, but may charge even a greater offense; or going still farther, as illustrated in the instant case, the district attorney may accuse the defendant with the commission of an offense entirely unrelated to that of which he was originally accused, or for which he was committed by the magistrate. As a further illustration, suppose that in a given case a defendant were charged with the crime of burglary and the evidence adduced on the preliminary examination showed that after the defendant had broken into the house which was burglarized, he had suddenly been confronted by a young woman, whom he overpowered, and then, without stealing anything or further molesting the young woman—because of his fear of detection and arrest, he had made his escape from the house; and suppose that on the preliminary examination of the defendant, the committing magistrate had held the defendant to answer to the Superior Court for the crime of burglary: Under the provisions of section 809 of the Penal Code, the district attorney might wholly disregard the judgment of the magistrate, as evidenced by the terms of the commitment, substitute his own judgment for that of the magistrate, and file an information by which the defendant would be charged with the crime of attempted rape. Although, as remarked in some authorities, it may be that because of the fact that with certain exceptions, owing to the fact that a justice of the peace in order to hold his office is not required to be licensed to practice law in all the courts of this state, and hence from a lawyer's standpoint ordinarily would not be as well qualified as a district attorney would be to correctly pass judgment upon the nature of the offense committed by the defendant,—it should not be overlooked that within certain defined areas, the committing magistrate must be a qualified lawyer, and consequently in such case possibly may be a better lawyer than the district attorney. Further than that, by the provisions of section 808 of the Penal Code, besides justices of the peace, the judges of the Municipal Court, the judges of the Superior Court and the justices of the Supreme Court are magistrates; and if perchance a justice of the Supreme Court should sit as a committing magistrate, perhaps it might appear incongruous that a district attorney of average ability and learning in the law should have the power to

overrule the judgment of such a magistrate in the matter of the determination of the particular crime for which a defendant should be prosecuted. So much in answer to the assigned reason for the enactment of the statute in question.

In the case of *People* v. *Anthony,* 20 Cal. App. 586 [129 Pac. 968, 969], the provisions of section 1008 of the Penal Code were given consideration. By the terms of that statute, in force at that time, the district attorney was authorized to amend an indictment or an information ''where it can be done without prejudice to the substantial rights of the defendant.'' In commenting upon the constitutionality of the statute, in part, the court said: '' . . . If the code section under discussion purported to permit an amendment to anything but the *mere formal allegations of an indictment we would have no hesitation in holding such a procedure unconstitutional.* The Constitution contemplates that an indictment shall be found and presented by a grand jury (Const., art. I, sec. 8) ; and to permit the district attorney to amend an indictment in matters of substance would in effect render the indictment no longer the finding of the grand jury. . . . ''

The leading case in this state, which really considers the constitutionality of the statute by which a district attorney is authorized to substitute his judgment for that of the committing magistrate regarding the offense for which the defendant is to be placed on trial, is that of *People* v. *Nogiri,* 142 Cal. 596 [76 Pac. 490]. Therein the following pertinent language appears: '' . . . The result of these decisions (former adjudications by the Supreme Court of this state) is to vest in a ministerial and executive officer, the district attorney, supervisorial, appellate and judicial powers controlling the judgment of a judicial magistrate who *alone,* under the *Constitution,* is empowered to hold the examination, and who *alone* is empowered to declare *by his commitment* the offense for which the accused person shall be put upon trial. *This, we think, the law neither contemplates nor permits.* The Constitution of this state (art. I, sec. 8) provides that 'offenses heretofore required to be *prosecuted* by indictment shall be prosecuted by information after examination and *commitment by a magistrate,'* . . . '' The opinion then proceeds to show that even aside

from the constitutionality of such a provision of such a statute, the statute there in question, then in force, and which before its recent amendment was the same statute here under consideration, was not broad enough in its terms to confer power on the district attorney to substantially alter a charge against a defendant as shown by the commitment of the magistrate. The language used by the court that " . . . There is thus neither in the Constitution nor in the laws enacted in furtherance of it, *the slightest vestige of judicial, discretionary, or appellate power given to the district attorney in controlling the action of the committing magistrate,"*—certainly cannot be taken to mean that notwithstanding the constitutional inhibition, the legislature might enact a legal statute that would permit the performance of an act in violation of the constitutional provision. It is most apparent that, if, as clearly appears by the decision, a judicial magistrate *"alone,* under the *Constitution,* is empowered to hold the examination, and who *alone* is empowered to declare by his commitment the offense for which the accused person shall be put upon trial"— any number of legislative enactments to the contrary could not legalize any act performed in pursuance of any such legislation.

As supplementing the authority of *People* v. *Nogiri,* 142 Cal. 596 [76 Pac. 490], see *Ex parte Fowler,* 5 Cal. App. 549 [90 Pac. 958]; *People* v. *Hudson,* 35 Cal. App. 234 [169 Pac. 719]; *People* v. *Bomar,* 73 Cal. App. 372 [238 Pac. 758].

In the case of *People* v. *Foster,* 198 Cal. 112 [243 Pac. 667], upon which principal reliance is placed for the conclusion reached in the majority opinion herein, the constitutionality of the statute was only incidentally mentioned and even then from a viewpoint entirely different from that here involved or under consideration. Although the effect of the decision is that by permitting the district attorney to amend the information so as to charge the defendant with robbing a person other than the one whom he was originally accused of robbing "violates no constitutional inhibition,"—from a reading of the entire opinion in the case, it is most apparent that the only constitutional

provision which was being considered by the Supreme Court was that which relates to and which affects the "due process" rights of the defendant (sec. 13, art. I), and had no relation whatsoever to section 8 of article I, which, as pointed out by Mr. Justice Henshaw in the Nogiri case (142 Cal. 596 [76 Pac. 490]), empowers the committing magistrate "*alone*" . . . "to hold the examination, and who *alone* is empowered to declare by his commitment, the offense for which the accused person shall be put upon trial." It is manifest that in the instant case the "due process" provision of the Constitution (sec. 13, art. I) might not only be violated, but at the same time the rights accorded to the defendant in the case by virtue of the terms of section 8, article I of the Constitution might be seriously infringed. Moreover, in the Foster case, neither in the brief presented by the appellant nor by the respondent was the issue of the constitutionality of the statutory provisions discussed or even suggested; and such consideration of the constitutionality of the statute as was given it by the Supreme Court arose from its own initiative. The force of the Foster case as an authority upon the constitutionality of the statute here in question, as applied to section 8 of article I of the Constitution, is much weakened. In none of the other cases, which are dependent upon the Foster case and to which reference is had in the majority opinion herein, is the instant constitutional question given original consideration.