Emit D. Jones, Plaintiff in Error,

*v.*

State, Defendant in Error.

(*Nashville,* December Term, 1959.)

Opinion filed February 5, 1960.

MARY GUIDI, Memphis, for plaintiff in error.

THOMAS E. FOX, Assistant Attorney General, for the State.

MR. JUSTICE SWEPSTON delivered the opinion of the Court.

Plaintiff in error, Emit D. Jones, hereinafter called the defendant, was convicted for the offense of involuntary manslaughter growing out of the reckless driving of an automobile and was sentenced to serve 11 months and 29 days in the Shelby County Workhouse.

On appeal there have been filed assignments of error, brief and argument covering 77 pages. Any attempt to

answer in detail all of the insistences made therein would be not only unnecessary but would unduly prolong this opinion.

In the brief in behalf of the State it is asserted that there is no assignment of error to the effect that the evidence preponderates against the verdict and in favor of the innocence of the accused. This statement, though not accurate, is induced by the unusual format of the arrangement in the brief and assignments of error in behalf of the defendant. On page 35 therein it is said that the verdict is contrary to the evidence; that the evidence preponderates in favor of the innocence of the defendant and against his guilt; that there is no evidence tending to establish (1) the *corpus delicti,* required under the indictment, and (2) causal connection between any act or omission of the defendant and the death of O. D. Hamer. It is then stated that, if the court finds otherwise, there are errors beginning with No. 1, as numbered in the brief, and so on through the 8th assignment.

It is stated also that if the court does not agree with the above stated propositions preliminary to the formal assignment of the 8 errors, the court erred in failing to charge the jury on circumstantial evidence.

The following recital of the evidence, which is really not in material dispute, will readily demonstrate that there is no merit in any of these insistences. The defendant and his father-in-law, O. D. Hamer, the deceased, were approaching the City of Germantown from the east along highway No. 72 in the automobile belonging to defendant at about 10:00 o'clock P.M. March 7, 1958. Two officers, who were both policemen of Germantown as

well as Deputy Sheriffs of Shelby County, Tennessee, while parked a few thousand yards east of the City Limits of Germantown, noticed the defendant's car as it passed them. They pulled out into the highway, followed defendant to the Hilltop Cafe within the corporate limits where the defendant pulled up and stopped for the purpose of getting a cup of coffee. The officers testified that they noticed that this car was being driven 60 miles per hour within the 30-mile city speed limit, so they told the defendant and the defendant's father-in-law, O. D. Hamer, to follow them to the City Hall. After going some distance with the defendant's car following about 150 feet behind the squad car, the defendant turned to one side and attempted to escape from the arresting officers. They drove back in an easterly direction and into highway No. 72 and headed east with the squad car giving chase. They drove a distance of 3 to 4 miles toward the east at a speed of 90 miles per hour, running through two principal intersections, driving on the left-hand side of the highway, passing numerous other automobiles, upon a wet and slippery road which had recently been rained upon until they finally skidded off of the road on the wrong side, struck a telephone pole and then skidded around in first one direction and then the other until the automobile was completely wrecked and ended up crossways of the road.

Both officers saw the defendant jump out of his car and run up an embankment and out across a field. They immediately gave chase but he was able to get away from them and they saw no more of him until next morning about 7 to 8 o'clock when he voluntarily surrendered himself. Neither officer saw the deceased leave the automobile and, of course, they could not say whether he

jumped out of the car or was thrown out by the impact but they did see that the right front door, beside which the deceased had been seen sitting as a passenger, was apparently opened by the impact. As soon as they returned from searching for the defendant, they found the body of the deceased about 15 feet away from the then position of the automobile down in the ditch and it was apparent that he was already dead. This was about 20 minutes after the wreck.

The body of deceased was taken to a funeral parlor and there the next morning an investigating officer from the office of the Sheriff of the County viewed the remains before it had been prepared for burial. His left arm had a compound fracture just below the shoulder to the extent that it could be bent at right angles; his left eye was knocked out completely; and a part of his brain was exuding through a mushy soft spot in the skull.

No doctor or undertaker was called to testify to the cause of death, but the investigating officer who viewed the body stated that these injuries could have caused the death and, of course, common sense dictates that it could have.

Thus we have this situation. These two officers saw the defendant and the deceased in the defendant's car with him driving as they left the Hilltop Cafe. They had the defendant's car under observation up until the time when the defendant attempted to escape. They immediately turned around, gave chase and saw the defendant's car in motion all the way until the accident occurred. They saw the defendant running away from the wreck. Although they did not see the deceased leave

the car at the time of the collision, they found him dead 15 feet away from the car within 20 minute thereafter.

The only defense was that the defendant did not know that these men were officers; that he was scared, because he thought they might be highwaymen or robbers, or something; he does not know how fast he was traveling in trying to escape; he does not know how the deceased got out of the automobile. The jury simply did not believe that he did not see the uniform and accoutrements of the officers while they were all in front of the Hilltop Cafe, because the proof is that the light was very plentiful and brilliant.

It, therefore, seems evident that there is no merit with regard to the insistences as to the preponderance of the evidence, the alleged *absence* of proof of the *corpus delicti* and the alleged lack of causal connection between the act of the defendant and the death of the deceased. It is also clear that this is not a purely circumstantial evidence case but is mixed direct and circumstantial evidence and hence the rule suggested by counsel has no application.

This case falls quite squarely within the case of *Smith v. State,* 196 Tenn. 168, 264 S.W.2d 803, wherein Mr. Justice Prewitt reviews all of the cases up to that time (1954), wherein the question of criminal negligence or lack of same is involved.

The first numbered assignment of error presents the question whether or not in a felony case defendant may waive his right to a trial by jury.

In support of the affirmative of this question, defendant's counsel, having sought to waive the jury in this

case and stand trial before the judge, cites *State v. Simmons*, 199 Tenn. 479, 287 S.W.2d 71 (Opinion by Swepston, J. and concurring opinion by Neil, C. J.). That case involved only a misdemeanor and hence anything said with regard to a felony is *obiter dictum*. Actually the question has never been decided before in this State. Two questions are at once presented: first, whether or not any provision or provisions of our Constitution forbid such a waiver and second, if not prohibited by our Constitution, under what circumstances should it be permitted, if at all.

The relevant sections of our Constitution are:

Art. I, Sec. 6: "That the right of trial by jury shall remain inviolate * * *."

Sec. 8: "That no man shall be * * * deprived of his life, liberty or property, but by the judgment of his peers or the law of the land."

Sec. 9: "The accused hath the right to * * * a speedy public trial, by an impartial jury ** *."

Neither of these provisions expressly provides for or prohibits a waiver of the rights conferred. The bench and bar of this State, however, has tended to assume that there could be no waiver of these rights, due, no doubt, to the fact that at common law there could be no waiver of such right, i. e., trial by jury and by reason of the esteem and sanctity in which this right has always been held and regarded. In *State ex rel. Lea v. Brown*, 166 Tenn. 669, 64 S.W.2d 841, 91 A.L.R. 1246, certiorari denied 292 U.S. 638, 54 S.Ct. 717, 78 L.Ed. 1491 (involving waiver of extradition) this Court *Held*, an accused may waive any statutory or constitutional provision intended for his benefit. And authorities cited to the effect that a

right to a speedy trial may be waived and so immunity from double jeopardy. Waiver of right to counsel is permitted. *Edgemon v. State,* 195 Tenn. 496, 260 S.W.2d 262.

In addition to the authorities cited on pages 492 and 493 of 199 Tenn., on pages 77 and 78 of 287 S.W.2d in *State v. Simmons,* supra, the subject is fully discussed in 31 Am.Jur., Secs. 49 and 50 under Jury. In the two United States Supreme Court cases cited in the Simmons case, i. e., *Adams v. United States ex rel. McCann,* 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268, and *Patton v. United States,* 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854, there was an agreement among the accused, the attorney general and the judge. While it was *Held,* there was no real satisfactory basis among the reported cases for holding that the similar rights guaranteed under the provisions of the Federal Constitution could not be waived, yet such waiver must be given under proper safeguards such as was there done. At page 312 of 281 U.S., at page 263 of 50 S.Ct.

Adverting then to the concurring opinion of the Chief Justice in our Simmons case, supra, we think that his language is equally appropriate in the case of a felony wherein on page 493 of 199 Tenn., on page 78 of 287 S.W.2d he said:

"But where the Constitution is silent, as in the case at bar, as to his right to waive a jury trial, and the statute authorizes it under proper safeguards, this Court should not deny him that right under the pretense, or fallacious theory, that the Act is unconstitutional."

Since there is no such statute on our books, however, we think the trial judge was not in error in refusing this request for a waiver of a trial by jury and the assignment is overruled.

Several assignments constitute an attack upon the validity of the warrant, upon the validity of the indictment, and upon an alleged variance between the two. It is said that they charged no crime under the law of Tennessee, because no facts but only legal conclusion is stated.

The pertinent language of the warrant is:

"Personally appeared before me (Sessions Judge) Hathcock and made oath in due form of law on the 7 day of March, 1958, in said County, and within the jurisdiction of the Criminal Court of Shelby County, Tennessee, one Emmett Jones did unlawfully commit the offense of murder—second degree—did unlawfully, feloniously, wilfully and maliciously kill and murder with an automobile."

The pertinent language of the indictment is:

"Feloniously, wilfully and maliciously kill and murder *O. D. Hamer,* with an automobile, and thereby commit the crime of murder in the second degree * * *."

That is, the warrant did not name the deceased whereas the indictment did. For the sake of discussion, we shall assume that the warrant is void for the reason that it fails to name or identify the deceased. It is further insisted that both the warrant and the indictment are void for failure to state facts describing the offense and that only conclusions were stated. We do not think

either document is faulty in that regard. Counsel may be enlightened by an examination of Gilreath's History of a Lawsuit, Sec. 725, p. 846, Form No. 267; Indictment for Murder in the First Degree. The language therein is substantially identical with the language involved herein.

That form has been followed in practice by members of the bar of this State. In *Givens v. State,* 103 Tenn. 648, 55 S.W. 1107, there was a two-count indictment, the first of which charged substantially in the same language as here involved, i. e., "committed murder in the first degree upon the body of Margaret J. Givens". No attack was made upon this count although an unsuccessful attack was made upon the second count, which need not be further mentioned.

In *Jordan v. State,* 156 Tenn. 509, 513, 3 S.W.2d 159, 160, after stating that an indictment must state the facts constituting the crime and not mere legal conclusions, it is said:

"(6) The degree of precision in the description of an offense cannot be given in an indictment, so as to distinguish it *per se* from all other cases of a similar nature. Such discrimination amounting to identification must rest in averment by plea and in the proof, and its absence in description in the indictment can be no test of the certainty required either for defense against the present prosecution or for protection against a future prosecution for the same matter. *State v. Pearce,* [7 Tenn. 66], supra; *State v. Cameron,* 50 Tenn [78] 86; *Millner v. State,* 83 Tenn. [179] 181; *State v. Stephens,* 127 Tenn. [282] 285, 154 S.W. 1149.''

In *Davis v. State,* 194 Tenn. 282, 286, 250 S.W.2d 534, 535, it is said:

"In an indictment for murder it is unnecessary to state the manner or means by which the death was caused. It is unnecessary to charge that the wound was inflicted with a particular weapon; to designate the part of the person upon which the wound was inflicted; or allege that the pistol was loaded with powder and ball. *Ray v. State,* 108 Tenn. 282, 67 S.W. 553."

Again, it is insisted that, since the issuance of a warrant is the commencement of a prosecution, any prosecution is confined to the matters alleged in the warrant, so that if the warrant is void, there can be no valid indictment for a correct and legal charge of any other offense.

Of course, there are three modes of commencing a prosecution as described in Gilreath's History of a Lawsuit, Sec. 720, to-wit: (1) by arresting the offender on a warrant issued by a magistrate; (2) arrest without a warrant; and (3) by presentment, indictment or impeachment.

Counsel has cited no authority and we think none will be found in this State holding that the validity of an indictment is to be tested and limited by what is found in the warrant. The purpose of a warrant is to give an accused person notice that he is charged with some offense and if the warrant is defective, objection may be raised before the committing magistrate or upon a habeas corpus proceeding before indictment. The correct rule is, however, that all questions as to the sufficiency of the warrant are foreclosed by the finding

of an indictment; because under T.C.A. secs. 40-1605 to 40-1625 grand juries in this State are given inquisitorial powers over all indictable or presentable offenses committed or triable within the county. Consequently, it would be a miscarriage of justice to hold that when the probability of the commission of a crime has been called to the attention of the grand jury by either a defective or even a void warrant, the grand jury would be powerless to investigate the situation further and to find a valid indictment for whatever offense or offenses their investigation might develop.

Counsel for defendant cites several out of state cases but upon examination of same it will be found that the procedure in those cases was controlled by either the constitutional or statutory provisions in that particular state. For example, in *People v. Bomar,* 73 Cal.App. 372, 238 P. 758, there is cited *People v. Nogiri,* 142 Cal. 596, 76 P. 490, in both of which cases a statutory provision, Pen.Code, sec. 809, limited the procedure to and by information instead of indictment and limited the duty and authority of the district attorney general. This statute was amended in 1927, however, to authorize and direct the district attorney to file information not only for the offense charged in the magistrate's order of commitment but for *any* offense shown by the evidence taken before the magistrate. *People v. Sanders,* 102 Cal.App. 237, 283 P. 136.

Also cited by counsel are 3 Alabama cases; *Green v. State,* 22 Ala.App. 56, 112 So. 98; *Green v. State,* 22 Ala-App. 346, 115 So. 700; *Ray v. State,* 28 Ala.App. 373, 184 So. 480. These cases are not relevant because they involve prosecutions originating in the county court and tried *de novo* on appeal in the circuit court. The statute

did not authorize an amendment in the circuit court that would amount to a change of the original charge.

*Prock v. State,* 114 Tex.Cr.R. 411, 23 S.W.2d 728 and *McNeely v. State,* 122 Tex.Cr.R. 173, 54 S.W.2d 512, are cases also commencing in the county court.

None of these cases are relevant to our situation, because we do not have such trials in the county court and secondly, there was no trial before the magistrate because the procedure is described in T.C.A. sec. 40-402 et seq. which limits the power of the justice of the peace (or a general sessions judge) to simply binding the accused over to the grand jury, if the grand jury of the county is in session, as it always is in Shelby County, unless the defendant should plead guilty.

Accordingly assignments 2, 2a, 3b, 3c, 4 and 5 are overruled.

■ Assignment 5b complains of the action of the court in refusing to grant defendant an appeal from the overruling of his demurrer of the indictment and from refusing defendant a continuance in order that a petition for certiorari in lieu of appeal might be filed to test out the overruling of the demurrer. There is no error in the action of the court in this respect. We can not entertain piecemeal appeals (*Allen v. State,* 194 Tenn. 296, 250 S.W.2d 539), nor petitions for certiorari as to interlocutory matters, except in rare instances where certiorari will lie; this is not one of those situations.

■ Assignment 6 complains of the action of the court in allowing the State to testify that the defendant was violating certain city ordinances of the City of Germantown without introducing the ordinances. There is no

merit in this insistence for the reason that just preceding the wreck in which Hamer was killed the defendant was violating the State statutes in several respects including speeding at 90 miles per hour where the State speed limit is 65 miles an hour, which was directly relevant and sufficient without any reference to the city ordinances at all.

Assignments 7 and 8 relate to the same matter. Following the reading of the indictment to the jury and the entry of the plea of not guilty, the jury was excused from the courtroom at the request of the defendant. Counsel for defendant then entered the general objection to the State's being permitted to adduce any evidence upon the indictment for the reasons heretofore stated in previous assignments of error. The jury was recalled and the examination of the first witness commenced whereupon counsel for the defendant renewed objection to the testimony on the basis heretofore stated. After several questions by the State to the witness, who was the widow of deceased, the State asked:

"At the time you saw him Friday morning, March 7, 1958, was he alive and in apparent good health? A. Yes.

"Miss Guidi: May it please the Court—the Court will have to excuse the jury again—

"The Court: For what reason, Miss Mary? We are not going to continue running this jury in and out on immaterial matters."

Miss Guidi then stated objection to the question as being improper.

It is earnestly insisted that this remark of the court was highly prejudicial, in fact, to her and her client.

We do not see any necessity for discussing the authorities with reference to comments by the trial judge with regard to the evidence, as suggested in numerous cases cited by counsel. We have given this record most careful consideration and, in view of what we have said above in regard to the evidence, we do not see how by any possibility this remark of the trial judge could have prejudiced counsel or her client to any degree whatever. This defendant has been as well represented as possible and the efficient work of his counsel is reflected in the light sentence imposed by the jury.

The judgment below is affirmed.