IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 27, 2016

### KENNETH WATTS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 99716    Bob R. McGee, Judge**

---

**No. E2015-01151-CCA-R3-PC – Filed June 14, 2016**

---

The petitioner, Kenneth Watts, appeals the denial of post-conviction relief from his 2009 Knox County Criminal Court jury convictions of vandalism and theft of property, for which he received a sentence of 15 years. In this appeal, the petitioner contends only that he was denied the effective assistance of counsel. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and ROBERT L. HOLLOWAY, JR., JJ., joined.

Gerald L. Gulley, Jr., Knoxville, Tennessee, for the appellant, Kenneth Watts.

Herbert H. Slatery III, Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Charme Allen, District Attorney General; and Eric Counts, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

A Knox County Criminal Court jury convicted the petitioner of vandalism of property valued at $10,000 or more but less than $60,000 and theft of property valued at $1,000 or more but less than $10,000, and the trial court imposed a total effective sentence of 15 years' incarceration. This court affirmed the convictions on direct appeal. *See State v. Kenneth Edward Watts*, No. E2010-00553-CCA-R3-CD, slip op. at 1 (Tenn. Crim. App., Knoxville, Nov. 8, 2011), *perm. app. denied* (Tenn. Mar. 7, 2012).

In *Kenneth Edward Watts*, this court stated the facts of the case. The evidence showed that the Reed family rented one-half of a duplex, identified as Apartment 14, to the petitioner and his girlfriend, Wendy Ray, in October 2006; the other half of the duplex, Apartment 13, was vacant. *Id.*, slip op. at 2. Although the defendant

and Ms. Ray paid the October rent, the November rent payment was late, and no payment was made in December or January. Kenneth "Ronnie" Reed personally delivered an eviction notice, dated January 25, 2007, to Ms. Ray, and, at that time, Mr. Reed did not notice any damage to the residence. *Id.* Although the petitioner and Ms. Ray had until the end of February to vacate the premises, Mr. Reed inspected their apartment on February 8. *Id.*

> He discovered that someone had detached both Apartment 14 and Apartment 13's air conditioning units from the wall, removed all of the wiring in the entire house, removed copper plumbing, and removed most of the guttering. He said that there was "an enormous amount of trash inside and outside of the house," including pieces of wire stripping, which had previously covered electrical wiring. Ronnie Reed testified that the [petitioner] and Ms. Ray were still living in the apartment, and they had run an electrical cord from a neighbor's house into their apartment. He said that they patched up a window that they had broken and covered the hole in the wall where the air conditioning unit had been with a towel. Ronnie Reed testified that he did not receive any complaints from the [petitioner] or Ms. Ray about not having any power. He said that the [petitioner] did not have permission to enter Apartment 13 nor did he have permission to take any of the items stolen from either apartment. Ronnie Reed testified that he had paid $8,000 to replace the wiring in the unit and estimated that there was $3,500 to $4,000 worth of work yet to be done on the plumbing. He paid $800 to replace the gutters. He spent another $1,600 on replacing the air conditioning units and $3,200 to have Apartment 14 cleaned, painted, and retiled. Ronnie Reed testified that the rental company did not have insurance to cover the damage to the duplex. He also testified that during the period of time that the duplex was damaged, "copper was at its highest rating for recycling."

*Id.*, slip op. at 2-3.

Edwin Doolin, who was employed by a scrap metal recycling business, testified that the petitioner, who had sold copper at his store several times, sold copper to him during January and February of 2007. *Id.*, slip op. at 3. Mr. Doolin had photocopied the petitioner's driver's license at the time of the sales. *Id.* On cross-examination, Mr.

Doolin acknowledged that he had sent an electronic mail "to a police detective stating that the [petitioner] had accompanied someone else to the store but remained outside while the other person sold approximately eight pounds of copper," but he clarified that the electronic mail was in reference to a single occasion. *Id.*

Knox County Sheriff's Department Detective T. Michael Chieves testified that he had "made contact with" the petitioner at his apartment on January 19, 2007, and had observed that the petitioner's "apartment 'looked like a pack rat lived there,' but he did not 'see any physical damage' at that time." *Id.* Following the issuance of vandalism and theft warrants, Detective Chieves photographed the subject properties and noticed "a burnt area in the backyard." *Id.* Detective Chieves "agreed that 'a common way to get the insulation off of the copper wire' was by burning it off." *Id.* On cross-examination, Detective Chieves admitted that he could not connect the copper wiring in the duplex to the copper sold to Mr. Doolin's business. *Id.*

Mary Myers testified for the defense that she lived on the same street as the duplex and could see the duplex from her residence. *Id.*, slip op. at 4. She stated that she "never saw the [petitioner] taking anything from the duplex, but she did see an individual known to her as Lee Presley taking items from the duplex." *Id.* On cross-examination, Ms. Myers conceded that Ms. Ray was her daughter but denied that Ronnie Reed had rented the apartment to Ms. Ray and the petitioner, claiming that Ronnie Reed's father, Walter Reed, was the only person "that ever gave them a receipt." *Id.* Ms. Myers also testified that she had purchased the air conditioning unit for Ms. Ray's and the petitioner's apartment. *Id.*

On rebuttal, Ronnie Reed reiterated that he had rented the apartment to Ms. Ray in October 2006 and testified that he had been forced to evict Ms. Myers from her residence as well. *Id.*

On May 30, 2012, the petitioner filed, pro se, a timely petition for post-conviction relief, alleging, *inter alia*, that he was deprived of the effective assistance of counsel. Following the appointment of counsel and the amendment of the petition, the post-conviction court conducted an evidentiary hearing on February 28, 2014.

At the evidentiary hearing, the petitioner testified that, between the conclusion of trial and the sentencing hearing, trial counsel informed him that he would be sentenced as a Range II offender because he had two prior felonies. At the sentencing hearing, the petitioner saw, for the first time, the presentence report that listed seven prior felony convictions, which "threw [the petitioner] for a loop." The petitioner asked trial counsel "what's going on," and trial counsel "shrugged his shoulders and just plowed on through the sentencing hearing," rather than seek a continuance on the basis of the new

information.  The petitioner testified that trial counsel was "in shock almost" after seeing the report.  The petitioner recalled trial counsel's discussing the "twenty-four hour rule" during the sentencing hearing.  The trial court ultimately sentenced the petitioner as a career offender.  Following sentencing, the petitioner attempted to file his own motions because he "just wanted to get [trial counsel] off [his] case," but the trial court refused to consider the petitioner's motions.  In a separate vandalism-and-attempted theft case, the petitioner was sentenced as a persistent offender.

The petitioner also addressed trial counsel's alleged ineffectiveness for failure to challenge the variance between the allegations in the indictment and the proof adduced at trial:

> [T]he indictment alleged five separate counts.  It was two counts of felony theft, two counts of felony vandalism, and one count of aggravated burglary, and the warrant that initiated it, the only sworn statement from the case was warrant 777079, which alleged Apartments 9, 10, G, and H, and the indictment had a joinder offense for aggravated burglary against Apartment 13.  When we got to trial, the only evidence that was presented concerned Apartments 14 and 13, respectfully, so.

At trial, trial counsel addressed the variance issue by arguing "that it was outside the parameters of the indictment," but because trial counsel failed to raise the issue in his motion for new trial, appellate review was precluded.

With respect to the State's notice of enhancement, the petitioner stated that he believed it to be deficient because it failed to list the nature of the felony convictions.  The petitioner testified that trial counsel was ineffective by failing to raise the deficiency in either the motion for new trial or on appeal.

Trial counsel testified that he had filed a timely motion for new trial following the petitioner's conviction in the underlying case.  Trial counsel agreed that the judgment was entered on January 15, 2010, and that in the section entitled "special conditions," it stated, "Motion for a new trial to be heard February 12th, 2010."

Trial counsel stated that he had met with the petitioner several times throughout his representation and that "from the get-go we had talked about his prior convictions and his assertion that [he] only had two."  Trial counsel recalled that he "could not get through to him that [he did] not have just two convictions" and that the petitioner "refused to understand that just because you pled on one date or pled on two

- 4 -

dates, does not mean you only have one or two felonies." Trial counsel continued, stating as follows:

> I told him about this twenty-four hours, that that may be an argument that we have but I've got nothing that's going to show the judge that these are all within twenty-four hours. First off we've got a March 11th, '91 date, two on March 25th, '91, two on – or one on March 28th, one on March 29th, one May 29th, another March 17th, and this is – I mean, that's seven and if you combine a couple from the same date it comes down to five. I mean, I had somewhat of an argument and his recollection of our discussions seems to be much different than mine. But we had talked about this and he knew full well about these and that that was a problem.

Trial counsel denied telling the petitioner that he was a Range II offender. He testified that the petitioner's plea offer "may have been a Range II" but that the petitioner had rejected the offer. At the sentencing hearing, trial counsel did argue that the trial court should examine the petitioner's criminal history through the lens of the 24-hour rule to count as few felony convictions as possible.

With respect to the underlying warrants, trial counsel could not recall whether the State had provided those to him. When asked whether the warrant at issue in the underlying case failed to mention Apartment 14, trial counsel responded, "I guess not, if it's not in the warrant."

Trial counsel reiterated that he had informed the petitioner that he could be sentenced as a persistent or career offender based on his criminal history. Trial counsel insisted that the petitioner "knew darn well" that he had been convicted of the prior felonies.

With this evidence, the post-conviction court denied relief, finding, in pertinent part, as follows:

> Variance: The third count of the five count indictment alleged damage to Apartment 13. The remaining counts alleged other damage to the premises without further specificity. At trial evidence was presented of damage to Apartment 13 as well as of evidence of damage to another apartment and other damage that was not limited to a single apartment. There was no variance between the indictment

and the proof and no ineffective assistance of counsel for failing to establish one.

Sentencing: [The p]etitioner testified that trial counsel told him he would be sentenced as a Range Two offender. He said that trial counsel never warned him that he could be sentenced as a Career Criminal. Trial counsel testified that he had multiple conversations about [the] petitioner's exposure in the case and that petitioner definitely knew he could be sentenced as a Career Criminal. [The p]etitioner said that at the sentencing hearing trial counsel argued that some of his convictions should be merged in compliance with the 24 hour rule. This issue was raised on direct appeal. The Court of Criminal Appeals held that it was the defendant's burden to establish whether any convictions were for crimes that were committed within 24 hours of each other, that he failed to do so, and was properly sentenced as a Career Criminal. [The p]etitioner testified on cross examination that he was unable to remember committing the other felonies because he was nineteen at the time. He testified on re-direct that he was able to remember that he committed aggravated burglary on 03-28-91 at 5:00 p.m. and that he attempted to sell cocaine the next day at 8:00 a.m. This court holds that the petitioner has failed to establish by clear and convincing evidence that trial counsel was ineffective either in communicating sentencing exposure to petitioner or in failing to establish that any convictions were subject to merger under the 24 hour rule. . . .

In this appeal, the petitioner reiterates his claim of ineffective assistance of counsel, claiming that trial counsel performed deficiently by failing to raise the issue of a material variance in the motion for new trial, by failing to advise the petitioner of the proper sentencing range or challenge his offender classification, and by failing to object to the State's deficient notice of enhancement. The State contends that the post-conviction court did not err by denying relief.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to

the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citing *Strickland*, 466 U.S. at 689), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted). We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

A claim of ineffective assistance of counsel is a mixed question of law and fact. *Kendrick*, 454 S.W.3d at 457; *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010); *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Kendrick*, 454 S.W.3d at 457; *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

In our view, the record fully supports the ruling of the post-conviction court. With respect to the issue of material variance, the five-count indictment charged the petitioner with theft of the Reeds' property valued at $10,000 or more but less than $60,000, which included heating and air-conditioning units, electrical wire, copper tubing and other items and which occurred between January 1 and January 18, 2007; vandalism of the Reeds' property valued at $10,000 or more but less than $60,000 between January 1 and January 18, 2007; aggravated burglary of Apartment 13 occurring between January 25 and February 9, 2007; theft of the Reeds' property valued at $1,000 or more but less than $10,000, which included electrical wiring, copper tubing, air-conditioning units, doors, gutters, and other items and which occurred between January 25 and February 9, 2007; and vandalism of the Reeds' property valued at $10,000 or more but less than $60,000 occurring between January 25 and February 9, 2007. The petitioner argues that the arrest warrants in the underlying case referred to certain apartments but that, at trial, the State introduced evidence of vandalism and theft at other apartments. This argument avails the petitioner nothing because the arrest warrants were superseded by the indictments. *See Jones v. State*, 332 S.W.2d 662, 667 (Tenn. 1960). Moreover, a variance will not qualify as fatal "if the indictment sufficiently informs the defendant of the charges against him so that he may prepare his defense and not be misled or surprised at trial" and "if the variance is not such that it will present a danger that the defendant may be prosecuted a second time for the same offense." *State v. Moss*, 662 S.W.2d 590, 592 (Tenn. 1984); *see also State v. Mayes*, 854 S.W.2d 638, 640 (Tenn. 1993). In the instant case, the petitioner failed to show that he was not sufficiently informed of the charges against him or that he was prejudiced by the alleged variance, and, as such, no fatal variance existed.

With respect to the petitioner's claim that trial counsel failed to inform him of the sentencing range he faced at trial, the evidence does not preponderate against the post-conviction court's implicit finding that trial counsel informed the petitioner, on more than one occasion, of his sentencing range and offender classification.

Finally, the petitioner's claim that trial counsel should have objected to the State's defective notice of enhancement must fail because of the petitioner's failure to introduce into evidence a copy of said notice of enhancement. As such, we hold the petitioner has failed to prove by clear and convincing evidence that trial counsel's representation was deficient or prejudicial.

The petitioner failed to establish that he was denied the effective assistance of counsel at trial. Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE